**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| John Meehan, in his capacity as the Executor of the Estate of Callie Jo Meehan,<br><br>Plaintiff,<br><br>v.<br><br>Hazen Bancorporation, Inc., Harvey Huber, Kathleen Huber, Christie Obenauer, Stephanie Huber, Shari Stroup, Seth Stroup, and Noah Stroup,<br><br>Defendants. | ) | **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**<br><br>Case No.: 1:26-cv-00122 |

---

Before the court is a *Motion to Dismiss for Failure to State a Claim* (Doc. No. 19) filed by Defendants Hazen Bancorporation, Inc., Harvey Huber, Kathleen Huber, Christie Obenauer, Stephanie Huber, Shari Stroup, Seth Stroup, and Noah Stroup (collectively "Defendants") on May 29, 2026. Plaintiff John Meehan, in his capacity as the Executor of the Estate of Callie Jo Meehan ("Plaintiff") filed a response in opposition on June 26, 2026. (Doc. No. 22). Defendants filed a reply on July 10, 2026. (Doc. No. 23).

## I. BACKGROUND

The following facts are taken from the parties' motions, pleadings, and supporting documents. The facts are presumed to be true for purposes of this order.

On April 21, 2026, Plaintiff initiated the above-captioned action by Complaint. (Doc. No. 1). Therein, Plaintiff asserted claims against Defendants for: (1) declaratory judgment; (2) breach of fiduciary duties-directors; (3) breach of fiduciary duties-shareholders; and (4) damages under North Dakota's Racketeer Influenced Corrupt Organizations ("RICO") law based on Defendants' alleged fraud and theft. (*See generally Id.*).

Callie Jo Meehan ("Meehan") owned 1,711 shares of common stock in the Hazen Bancorporation, Inc. (*Id.* at 3). She and the other owners of common stock were subject to the terms and conditions of Hazen Bancorporation, Inc.'s Stock Buy-Sell Agreement. (*Id.*).

Meehan suffered from illness, and in the summer of 2024, re-registered her shares through the issuance of three certificates made out to: (1) Callie Meehan T.O.D. Grace Meehan; (2) Callie Meehan T.O.D. Claire Meehan; and (3) Callie Meehan T.O.D. Peter Meehan (collectively "Meehan children"). (*Id.* at 3-4). On November 2, 2024, Meehan passed away. (*Id.* at 4).

Based on its reading of the Stock Buy-Sell Agreement, Hazen Bancorporation, Inc. believed the shares passed to the named beneficiaries immediately upon Meehan's death. (*Id.*). However, Plaintiff alleged that Hazen Bancorporation, Inc.'s actions proved otherwise, as it did not make December 2024 or subsequent distributions to Meehan's children (i.e., Grace, Claire, and Peter) but instead waited to make them until July 2025. (*Id.*). The children's stock certificates were not entered into the books upon Meehan's passing, nor were they provided with information on Hazen Bancorporation, Inc., or invited to shareholder or other meetings. (*Id.*).

Plaintiff believed that, based on the Stock Buy-Sell Agreement and North Dakota law, the Estate was the rightful owner of the stock from November 3, 2024, to June 30, 2025, and during this period, he had legal possession of the shares as Executor of the Estate. (*Id.* at 5).

Since Meehan's death, the Estate has been denied rights as a shareholder, deprived of distributions owed, denied the right to participate or vote at shareholder meetings, denied access to books and records, and neither given nor notified of the opportunity to exercise the option to purchase shares upon the death of shareholder Charles Stroup as provided by the Stock Buy-Sell Agreement. (*Id.* at 5-6).

## II. LEGAL STANDARD

A motion to dismiss may be brought under Federal Rules of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." "To survive a Rule 12(b)(6) motion, a complaint must contain 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *FastTrac Transportation, LLC v. Pedigree Techs., LLC*, 618 F.Supp.3d 858, 863 (D.N.D. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "[A] formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In ruling on the motion, the court must accept the factual allegations in the complaint as true and construe them in a light most favorable to the nonmoving party. *Bohan v. Honeywell Intern., Inc.*, 366 F.3d 606, 608 (8th Cir. 2004).

Matters outside the pleadings may not be considered by the court when deciding a Rule 12(b)(6) motion, but documents embraced by the complaint may be considered. *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017); *see Enervations, Inc. v. Minnesota Mining & Mtg. Co.*, 380 F.3d 1066, 1069 (8th Cir. 2004).

> While courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;" without converting the motion into one for summary judgment.

*Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n. 3 (8th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (4th ed. 2024)).

## III. DISCUSSION

In support of the *Motion to Dismiss for Failure to State a Claim*, Defendants argue that at no time was the Estate a shareholder in Hazen Bancorporation, Inc., and so Defendants owed no duty to the Estate, and Plaintiff has failed to allege a plausible claim under RICO. In response,

Plaintiff contends that Defendants improperly interpreted the North Dakota Century Code and requests the motion be dismissed in its entirety.

**1. The Estate as a Shareholder in Hazen Bancorporation, Inc.**

Plaintiff's Complaint largely centers on the argument that from November 3, 2024, through June 30, 2025, the Estate owned Meehan's share of stock in Hazen Bancorporation, Inc. Defendants argue that at no time was the Estate a shareholder in Hazen Bancorporation, Inc., as the shares owned by Meehan passed to the beneficiaries under North Dakota's non-probate transfer on death laws.

The primary argument relies on the correct interpretation of the Uniform TOD Security Registration Act of 1989, as codified in North Dakota Century Code. Pursuant to North Dakota Century Code § 30.1-31-27:

> On death of a sole owner or the last to die of all multiple owners, ownership of securities registered in beneficiary form passes to the beneficiary or beneficiaries who survive all owners. On proof of death of all owners and compliance with any applicable requirements of the registering entity, a security registered in beneficiary form may be reregistered in the name of the beneficiary or beneficiaries who survived the death of all owners. Until division of the security after the death of all owners, multiple beneficiaries surviving the death of all owners hold their interests as tenants in common. If no beneficiary survives the death of all owners, the security belongs to the estate of the deceased sole owner or the estate of the last to die of all multiple owners.

There is a dearth of case law interpreting the meaning of the relevant statutory sections. The Eastern District of Missouri has previously addressed a similar issue regarding the State of Minnesota's analogous statute. In assessing whether there was a valid registration of a beneficiary form, the Eastern District of Missouri opined in part as follows:

> Until the death of the owner or owners of the security, the registration has no effect and the consent of the beneficiary is not needed to cancel or change the registration. On the death of a sole owner of a TOD security, ownership "passes to the beneficiary[.]" The transfer resulting from the TOD designation "is effective by reason of the contract … between the owner of the security and the registering entity" and Minnesota's Uniform Transfer on Death Security Registration Act (the

> TOD Act). The transfer is non-testamentary, but the registration can be cancelled by specific reference in the owner's will.

*U.S. Bank Nat'l Ass'n v. Beck*, No. 4:20-CV-01847, 2022 WL 110603, at *4 (E.D. Mo. Jan. 12, 2022) (internation citations and footnotes omitted).[1] The court further went on to describe that if a registering entity accepts a request for registration in beneficiary form, such an acceptance constitutes an agreement to implement the registration to a beneficiary on death of the security owner. However, the registering entity is permitted to establish the terms and conditions under which it will accept and implement registrations in beneficiary form, which includes authority to establish terms for the designation of beneficiaries and requests to cancel beneficiary designation. *Id.*

The statutory laws of the State of Minnesota considered by the Eastern District of Missouri are similar to the laws of the State of North Dakota. As relevant here, North Dakota Century Code §30.1-31-29(1) states that "[a] transfer on death resulting from a registration in beneficiary form is effective by reason of the contract regarding the registration between the owner and the registering entity and sections 30.1-31-21 through 30.31-30 and is not testamentary." *See* Minnesota Century Code § 524.6-309 (1)(a) ("A transfer on death resulting from a registration in beneficiary form is effective by reason of the contract regarding the registration between the owner and the registering entity and sections 524.6-301 to 524.6-311 and is not testamentary."). The State of North Dakota similarly permits the registering entity to establish terms and conditions for requests for registrations in beneficiary form, implementation of registrations, requests for cancelation of previously registered designations, and requests for reregistration. N.D.C.C. § 30.1-33-30(1).

---

[1] The Eastern District of Missouri considered this matter pursuant to the laws of the State of Minnesota under the choice of law principles. *See Id.* at 3.

Upon reviewing the North Dakota Century Code, Uniform TOD Security Registration Act of 1989, and relevant case law, the court agrees with Defendants that at no time was the Estate a shareholder of Hazen Bancorporation, Inc. Plaintiff argues the Estate, and he, as executor of the Estate, were the shareholders of Meehan's shares of common stock from November 3, 2024, the day after Meehan's death, until June 30, 2025, the day before the Meehan children received actual delivery of stock certificates. (Doc. No. 1 at 5). However, statutory interpretation contradicts such an argument. This court has previously addressed the legislative intent of state statutes.

> Statutes are construed to ascertain legislative intent. "In ascertaining legislative intent, [courts] look first to the words used in the statute, giving them their plain, ordinary, and commonly understood meaning. If the plain language of the statute is clear and unambiguous, the letter of the statute cannot be disregarded under the pretext of pursuing its spirit because legislative intent is presumed clear form the face of the statute." Courts are to presume the legislature said all that it intended to say. Words or phrases cannot be added by a court.

*In re Racing Servs., Inc.*, 504 B.R. 549, 554 (D.N.D. 2014), *aff'd*, 779 F.3d 498 (8th Cir. 2015). N.D.C.C. § 30.1-31-27 is neither ambiguous nor unclear. A reading of the plain language of the statute provides that upon the death of a sole owner or the last of all multiple owners, ownership of securities registered in beneficiary form pass to the beneficiary or beneficiaries who survive all owners. *See id.* Here, Meehan was the sole owner of her specific share of stock and registered her shares to pass to her children upon her death. Meehan died in 2024. She was survived by her three children. Consequently, ownership of the registered securities passed to her three children as the named beneficiaries. The statute next states that the securities registered in beneficiary form *may* be reregistered upon proof of death of all owners and compliance with applicable requirements of the registering entity, in this case, Hazen Bancorporation, Inc. There is nothing stating that ownership of the securities passes to the Estate until proof of death and compliance with the registering entity is fulfilled, rather, the statute expressly states that upon death of the owner, ownership of the securities registered in beneficiary form pass to the beneficiary or beneficiaries

who survived the owner. Moreover, it is clear from the statute that until division of security, the beneficiaries act as tenants-in-common. If it were the intention of the legislature to have the securities pass to the Estate until reregistration occurs, there would have been no need to specify the ownership status of the beneficiaries until the securities' division. Even if the court were to construe the remainder of this statute in Plaintiff's favor, nothing in the statute supports Plaintiff's argument that for a period of time he was shareholder of the stock. Notably, the only way Plaintiff and the Estate could have acted as shareholder was if each of the children, as beneficiaries, predeceased Meehan, at which time the security would pass to Meehan's estate.

As to the parties' Buy-Sell Agreement, Hazen Bancorporation, Inc. was permitted to establish any terms and conditions of registration in beneficiary form, and in fact did so. (*See generally* Doc. No. 20-1). As provided by the agreement,

> [G]ifts or bequests by one Shareholder to another Shareholder or to or in trust for a child or grandchild of the original Shareholders are permitted, subject to approval by shareholders of the Company who collectively own at least a majority of the shares of voting and non-voting common stock of the Company. However, said shares remain subject to the options that rise upon the death of the original Shareholder as if the original Shareholder continued to own said voluntary and involuntary transfers in the same manner as if the subsequent owner of said shares was a Shareholder party to this Agreement.

(Doc. No. 20-1 at 2). The agreement further contemplates the death of any shareholder, granting Hazen Bancorporation Inc. the option to purchase all or any part of the stock owned by each shareholder, including any future shareholder, at the time of their death. (Doc. No. 20-1 at 6). This purchase option arises immediately upon the shareholder's death and is exercisable one-hundred eighty (180) days from and after the date of death by delivery of written notice to the personal representative of the shareholder's Estate, or to any beneficiary who becomes a holder of the shares during the one hundred eighty (180) day period. (*Id.*). If Hazen Bancorporation, Inc. decides not to exercise its option, the remaining shareholders will have an additional thirty (30) days after

notice of Hazen Bancorporation, Inc.'s election not exercise its option, to purchase said shares. (*Id.*).

Plaintiff argues that if the court were to adopt Defendants' position, the consequence would be that Meehan's ownership interests were essentially held in "stock purgatory" following her passing until May 1, 2025, when the Meehan children's stock certificates were dated. However, a computation of time from the date of Meehan's death, November 2, 2024, plus one-hundred eighty (180) days during which time Hazen Bancorporation, Inc. could exercise its option to purchase the stock, amounts to May 1, 2025, the date the stock certificates were signed. Although Plaintiff argues this "stock purgatory" essentially results in only him having the ability to assert legal rights to the shares during the period from which Meehan died until the transfer of ownership, the Stock Buy-Sell Agreement specifically provides that even upon a shareholder bequeathing their shares upon their death, the shares remain subject to the options that would have given rise upon the death of the original shareholder, meaning that Hazen Bancorporation, Inc. would still have had the right to exercise its option to purchase the stock within the one-hundred eighty (180) day window, even if the beneficiaries became the holders of Meehan's stock during that period.

Because North Dakota Century Code § 30.1-31-27 is unambiguous and cannot be interpreted in a way resulting in Plaintiff being a shareholder of Hazen Bancorporation, Inc. at any time after the death of Meehan, and the Stock Buy-Sell Agreement permitted transfer of securities registered in beneficiary form to beneficiaries upon the death of the owner, his claims must be dismissed for failure to state a claim under Rule 12(b)(6) as the alleged claims rest on his standing as Shareholder of the securities.

**2. RICO Claim**

Defendants dispute whether Plaintiff has stated a plausible claim to damages under North Dakota's RICO statute, codified under North Dakota Century Code Chapter 12.1-06.1, for alleged theft and fraud. (Doc. No. 20 at 11). Defendants further contend that Plaintiff's RICO claim should be dismissed pursuant to Federal Rules of Civil Procedure 9 as there have been no allegations of criminal conduct on part of any Defendants and there is a lack of continuity required to show a pattern of racketeering activity. (*Id.*). In response, Plaintiff requests the court deny Defendants' motion to dismiss the RICO claim as the specifics of the case have been articulated in the Complaint, and Defendants incorrectly rely on the federal interpretation of North Dakota's RICO statute. (Doc. No. 22 at 9-11). North Dakota Century Code provides the relevant definition of racketeering in this context:

> f. "Racketeering" means any act including any criminal attempt, facilitation, solicitation, or conspiracy, committed for financial gain, which is chargeable or indictable under the laws of the state in which the act occurred and, if the act occurred in a state other than this state, would be chargeable or indictable under the laws of this state and the act occurred in this state and punishable by imprisonment for more than one year, regardless of whether such act is charged or indicted, involving:
>
> …
> (5) Theft.
> …
> (15) Fraud.
> …

N.D.C.C. § 12.1-06.1-01(2)(f)(5), (15). In the event a pattern of racketeering activity or by violation of section 12.1-06.1-2 or 12.1-06.1-03 causes injury to a person, business, or property, an action may be filed for recovery of treble damages and costs of suit, including reasonable attorney fees. N.D.C.C. § 12.1-06.1-05(1). To establish a pattern of racketeering, there must be at least two acts of racketeering activity, one of which occurred after July 8, 1987, and the last of

which occurred within ten years after the commission of a prior act of racketeering activity, excluding any period of imprisonment. N.D.C.C. § 12.1-06.1-01(2)(e).

Both parties point to *Burr v. Kulas* to support their assertions that federal or state interpretation applies. 1997 ND 98, 564 N.W.2d 631. Defendants contend that the North Dakota Supreme Court in *Burr* found it appropriate to look to federal law when interpreting North Dakota racketeering statutes. (*See* Doc. No. 20 at 12-13). Plaintiff on the other hand argues that the North Dakota Supreme Court in *Burr* acknowledged that state RICO statutes were to be treated differently than their federal counterparts and the North Dakota Supreme Court's analysis substantially differed from federal cases. (Doc. No. 22 at 10).

Upon review of *Burr*, as a case of first impression, the North Dakota Supreme Court looked to federal case law for guidance. *Burr v. Kulas*, 1997 ND 98, ¶ 14, 564 N.W.2d 631 (finding that the definition of a pattern of racketeering activity as amended by the North Dakota legislature now more closely resembles federal law). Despite the parties' disagreement on *Burr's* conclusion, the court points out that it has previously addressed both federal and state RICO claims. *See generally Geraci v. Women's Alliance, Inc.*, 436 F.Supp.2d 1022 (D.N.D. 2006). This court previously found that the North Dakota Supreme Court has interpreted the state RICO statute's essential elements in a way that mirrors those of the federal statute. *Id.* at 1039; *see Rolin Manufacturing, Inc. v. Mosbrucker*, 544 N.W.2d 132, 138 (N.D. 1996).

The court finds that Plaintiff does not correctly interpret the North Dakota Supreme Court's holding in *Burr* to treat the state enactment of RICO differently than that of its federal counterparts. While Plaintiff points to a section of the case that supports his interpretation, further reading into the case disputes such a finding. A full reading of the section cited by Plaintiff provides that when North Dakota's RICO statute was originally enacted, it was considered a "criminal syndicate" type

statute with a different form of applicability than the "little RICO" statutes adopted by other states that were patterned after the federal RICO statute. *Burr*, 1997 ND 98, ¶ 14, 564 N.W.2d 631. However, the statute was amended in 1995 to require the "pattern of racketeering activity." *Id.* In so doing, the North Dakota statute now more closely resembles federal law, shifting its status towards a "little RICO" statute patterned after the federal RICO law and away from its status as a "criminal syndicate" statute.

To establish a RICO claim, Plaintiff must not only show that the racketeering predicates are related, but he must also show that the racketeering acts amount to or pose a threat of continued criminal activity. *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239 (1989). Under either federal or state law, Plaintiff would still be required to show at least two qualifying predicate acts. *See* N.D.C.C. § 12.1-06.1-01(2)(e); 18 U.S.C. § 1961(5). There is no evidence that Defendants have prior convictions for these acts, meaning Plaintiff bears the burden of establishing by probable cause each alleged predicate act. *Geraci*, 436 F.Supp.2d at 1040. Assuming arguendo that Plaintiff established probable cause for the predicate acts, he still cannot meet the continuity requirement.

The continuity requirement may be met in one of two ways, either through closed-ended continuity or open-ended continuity. *Geraci*, 436 F.Supp.2d at 1043. "Closed-ended continuity can be proved by showing a series of related predicates extending over a substantial period of time. Conversely, open-ended continuity, requires showing a specific threat extending indefinitely into the future." *Id.* (internal quotations and citations omitted). Looking first to closed-ended continuity, the alleged time frame does not satisfy the "substantial period of time" requirement. Plaintiff alleges the pattern of racketeering occurred from approximately November 3, 2024, until July 1, 2025. This is a period of approximately eight months. This court has previously determined

that a period of five and a half months is insufficient. *Id.* at 1044; *see also Primary Care Invs., Seven, Inc. v. PHP Healthcare Corp.*, 986 F.2d 1208, 1215 (8th Cir. 1993) (concluding that a period of ten or eleven months was insufficient to span the substantial period required for establishing a period of racketeering activity). The court reaches the same conclusion here, where the period of time during which the predicate acts were alleged to have occurred lasted only eight months. Plaintiff similarly cannot show open-ended continuity. As opined by Plaintiff himself, the Meehan children obtained their signed stock certificates in 2025. Because the Meehan children are the shareholders of Meehan's stock, Plaintiff cannot prove there is a specific threat extending indefinitely into the future as the stock is in control of the children as beneficiaries.

Federal Rules of Civil Procedure 9(b) requires that when alleging fraud, any circumstances constituting fraud must be stated with particularity, with malice, intent, knowledge, and other conditions of a person's mind alleged generally. Fed. R. Civ. P. 9(b).

> Rule 9(b)'s "particularity requirement demands a higher degree of notice than that required for other claims," and "is intended to enable the defendant to respond specifically and quickly to the potentially damaging allegations." "To satisfy the particularity requirement of Rule 9(b), the complaint must plead such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result."

*NRRM, LLC v. Empire Auto Protect, LLC*, No. 4:25-CV-716 SRW, 2026 WL 21230, at *2 (E.D. Mo. Jan. 5, 2026) (internal citations and explanatory parentheticals omitted).

Defendants argue that pursuant to Rule 9(b)'s heightened requirement, Plaintiff failed to plead with particularity allegations of specific content, dates, persons involved, or who specifically made any fraudulent statement. (Doc. No. 20 at 12). Further, no specific property, itemization of amount, or dates alleged that constitute a theft are alleged in the Complaint, instead, Count Four only contains conclusory allegations. (*Id.*). Plaintiff in turn disputes such a claim, pointing to specific paragraphs supporting his RICO claim. (*See generally* Doc. No. 22 at 9-10). Notably,

Hazen Bancorporation, Inc, and the individual defendants in control of it operate as the "who." The "when" consists of an eight-month period from November 3, 2024, until July 1, 2025, during which time harmful actions occurred. These "actions" consisted of theft and fraud. As to the "how," Plaintiff points to Defendants conduct in theft of distributions, as no distributions were made to Plaintiff, the Estate representative, or beneficiary children, during the relevant time-frame, theft of the legal rights the shares represent for the relevant time-period, and fraud based on lack of opportunity to purchase proportionate shares of Shareholder Charles Stroup upon his death.

The court agrees with Plaintiff that the Complaint alleges, though not necessarily under Count Four, enough facts to meet Rule 9(b)'s particularity requirement. However, Plaintiff failed to allege a claim meeting the requirements of RICO. Moreover, because Plaintiff has failed to state a claim upon which relief can be granted under the Federal Rules of Civil Procedure 12(b)(6) as to his claim he was the rightful shareholder of the stock as executor of the Estate, there cannot be a cognizable RICO claim as it relies on Plaintiff being the rightful shareholder from the time after Meehan's death until the Meehan children received their stock certificates, during which time the predicate acts were alleged to have occurred.[2]

**3. Leave to Amend Complaint**

As an alternative, Plaintiff requests that if the court finds dismissal appropriate, that Plaintiff be granted leave to amend his Complaint. In support of this request, Plaintiff points to Federal Rules of Civil Procedure 15. Federal Rules of Civil Procedure 15(a) provides that leave to amend pleadings shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). This

---

[2] To the extent Plaintiff may attempt to argue there are still claims as to the Meehan children based on Hazen Bancorporation Inc.'s failure to make distributions, theft of legal rights to the shares, and lack of opportunity to purchase proportionate shares of a deceased shareholder, the court will not consider such an argument. Plaintiff represents himself as executor of the Estate. He does not represent the beneficiary children, nor are they parties to this litigation.

standard has been liberally construed by the Eighth Circuit, finding that "[u]nless there is a good reason for denial, 'such as undue delay, bad faith, or dilatory motive, reported failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment, leave to amend should be granted.'" *Becker v. Univ. of Neb. at Omaha*, 191 F.3d 904, 907-08 (8th Cir. 1999) (quoting *Brown v. Wallace*, 957 F.2d 564, 566 (8th Cir. 1992)). However, even under this liberal standard there is no absolute right to amend. *Tealeh v. Ward Cty.*, No. 1:17-CV-105, 2020 WL 265195, at *2 (D.N.D. Jan. 17, 2020).

Pursuant to the District of North Dakota's local rules, any party seeking leave of court to file an amended document must file the proposed document as an attachment to the motion. D.N.D. Civ. L.R. 7.1(A)(5). The proposed document must identify any proposed changes. *Id.* There is no proposed document present here. Even if one were present, the court still would not permit amendment. While Plaintiff is correct that this matter is in its infancy, no scheduling plan has been issued, and leave to amend should be freely given, granting Plaintiff leave to amend his Complaint would prove futile. There are no facts present for the court to determine what the basis for any amendment would be, there is no proposed amendment for the court to review or for Defendants to respond to, and were amendment permitted, the result would be the same, where here, Plaintiff is not and has not been, a shareholder in Hazen Bancorporation, Inc.

## IV. CONCLUSION

For the reasons above, the court **GRANTS** Defendants' *Motion to Dismiss for Failure to State a Claim*. (Doc. No. 19).

**IT IS SO ORDERED.**

Dated this 28th day of August, 2026.

*/s/ Clare R. Hochhalter*
Clare R. Hochhalter, Magistrate Judge
United States District Court